***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Homick, with minor modifications, and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the North Carolina Industrial Commission and are subject to governance by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed at all times relevant herein.
3. Defendant was self-insured at all relevant times herein.
4. Plaintiff suffered an injury by accident on the day in question and Defendant has accepted the claim.
5. Plaintiff's average weekly wage is $451.33, which yields a compensation rate of $300.90.
6. The parties stipulated to the admissibility of the following documents, which were received into evidence by the Deputy as Exhibits:
 • Exhibit 1: Pre-Trial Agreement;
 • Exhibit 2: Industrial Commission Forms and Filings (Pages 1-99);
 • Exhibit 3: Plaintiff's Medical Records (Pages 1-168);
 • Exhibit 4: Surveillance Video;
 • Exhibit 5: Disciplinary Action Report — January 20, 2010;
 • Exhibit 6: Disciplinary Action Report — January 21, 2010;
 • Exhibit 7: Performance Planning and Evaluation (Pages 1-7);
 • Exhibit 8: Plaintiff's Responses to Defendant's Interrogatories and Request for Production of Documents; and
 • Exhibit 9: Defendant's Responses to Plaintiff's Interrogatories and Request for Production of Documents.
 ***********
The issues to be determined are: *Page 3 
 ISSUES
1. Is Defendant entitled to terminate benefits to Plaintiff for his refusal to return to work in his previous position of employment with restrictions, when released by his physician to do so?
2. Is Defendant entitled to a credit for all temporary total disability benefits paid to Plaintiff from the date Defendant filed its Form 24 Application to Suspend or Terminate Compensation?
3. Did Plaintiff rightfully refuse to return to work when released by his physician to do so, with restrictions, because Defendant failed to offer suitable employment?
4. Was Plaintiff at maximum medical improvement when released to return to work by his physicians, with restrictions, on or about January 5, 2010, and if not, was Defendant required to offer Plaintiff "suitable employment" in order to require him to return to work?
5. Was the Special Deputy Commissioner correct in denying approval of Defendant's Form 24 Application to Suspend or Terminate Compensation?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was forty-five (45) years of age. Plaintiff had graduated from high school.
2. In approximately 2006, Plaintiff commenced work with Defendant as a light equipment operator in the Utilities Division and later transferred to the Streets Division. His *Page 4 
duties in the Streets Division included driving an asphalt truck, smoothing asphalt with a loop, shoveling asphalt, cleaning equipment, and carrying supplies.
3. On June 12, 2009, Plaintiff sustained an injury to his lower back when he fell as a result of his left foot slipping on gravel while spreading asphalt.
4. That same day, Plaintiff presented to Ken Bush, a Certified Physician's Assistant at PrimeCare in Winston-Salem with complaints of lower back pain due to an injury. Plaintiff was diagnosed with a lumbar strain, placed on light duty work restrictions, and treated conservatively. Plaintiff was subsequently referred for physical therapy.
5. As Plaintiff's symptoms continued, he was referred to Greensboro Orthopaedic Clinic and was treated by Dr. Dahari Brooks and subsequently by Dr. Richard Ramos.
6. On July 27, 2009, Plaintiff first presented to Dr. Brooks, an orthopedic surgeon, with complaints of acute low back pain that radiated into both buttocks and into the thigh. Dr. Brook's opined that Plaintiff was experiencing symptomatic degenerative disc disease, secondary to his June 12, 2009 work injury. At that time Dr. Brooks did not consider Plaintiff to be a surgical candidate and recommended medication, a lumbar corset, and an epidural injection. Dr. Brooks also assigned light duty work restrictions consisting of no lifting over ten (10) pounds, no bending, stooping or squatting, no prolonged standing or sitting, and no overhead work.
7. Dr. Brooks continued to treat Plaintiff conservatively, including a course of physical therapy, until October 6, 2009. On that date Dr. Brooks provided Plaintiff with two options: an epidural steroid injection or medical pain management. If an injection failed to provide relief, the only other option that Dr. Brooks could provide would be a lumbar fusion operation. Dr. Brooks continued Plaintiff's light duty restrictions. *Page 5 
8. On October 8, 2009, Plaintiff contacted Greensboro Othopaedic Center and notified Dr. Brooks that he did not want to proceed with surgery at that time. As such, Dr. Brooks recommended ongoing medical pain management and assigned a five percent (5%) rating to Plaintiff's back as reflected in his medical note. Dr. Brooks entered the rating on a Form 25R on October 12, 2009. Dr. Brooks testified, and the Full Commission finds as fact, that Plaintiff was at maximum medical improvement at the time he was rated and released from Dr. Brooks' care on October 8, 2009.
9. Plaintiff underwent a Functional Capacity Evaluation (FCE) performed by Jennie Maness on October 21, 2009. Ms. Maness testified that the FCE was valid and that Plaintiff was functioning at a light-medium physical demand classification.
10. On October 26, 2009, Plaintiff presented to Dr. Richard Ramos, a pain management specialist, at Greensboro Orthopaedic Center. As Plaintiff was somewhat indecisive as how best to treat his pain, Dr. Ramos at first managed Plaintiff's ongoing back pain conservatively. Plaintiff was released to work with the restriction of no lifting over forty (40) pounds, as indicated from the FCE.
11. On November 25, 2009, Defendant accepted Plaintiff's claim for a sprain/strain of the lower back with the filing of a Form 60 Employer's Admission of Employee's Right to Compensation. On the same date Defendant executed a Form 26A agreement to pay Plaintiff's rating.
12. On December 2, 2009, Plaintiff underwent an epidural steroid injection. He initially "was doing okay" according to the December 4, 2009, medical note of Dr. Ramos; however, he subsequently responded poorly and sought treatment at the Wake Forest University Baptist Medical Center Emergency Department on December 7, 2009. *Page 6 
13. On December 10, 2009, Plaintiff returned to Dr. Ramos. Plaintiff reported that his pain level increased following his epidural steroid injection. Dr. Ramos released him from work and recommended an MRI to help determine whether there was a complication from the injection.
14. On December 22, 2009, Plaintiff underwent a lumbar MRI and then returned to Dr. Ramos on December 29, 2009. Dr. Ramos recommended an EMG nerve conduction study and opined that Plaintiff was able to return to work with light duty restrictions that included no lifting over ten (10) pounds, according to his medical note.
15. On January 5, 2010, Plaintiff returned to Dr. Ramos and reported a recent visit to the Emergency Room due to increased back and buttock pain. Plaintiff indicated he was willing to consider surgery. Dr. Ramos ordered a discogram and returned Plaintiff to work with a thirty (30) pound restriction.
16. On January 15, 2010, Plaintiff underwent a discogram and CT lumbar spine imaging. On January 25, 2010, he returned to Dr. Brooks. After reviewing the FCE results and the radiographic findings, Dr. Brooks increased Plaintiff's permanent partial disability rating to fifteen percent (15%) and assigned permanent work restrictions of no lifting and carrying over twenty (20) pounds and restricted him from driving or riding in a dump truck for over two (2) hours without a fifteen (15) minute break. Dr. Brooks recommended that Plaintiff continue to treat with a pain management specialist in Winston-Salem.
17. Ms. Maness testified that an initial job description provided by Defendant for a light equipment operator in the Utilities Division was outside of Plaintiff's capabilities pursuant to the FCE. Ms. Maness further testified that the job would have to be modified in order for Plaintiff to perform the position. *Page 7 
18. Ms. Maness testified that on January 12, 2010, she received a different job description from Brenda Ratcliffe, Plaintiff's case manager. Ms. Maness did not have a chance to speak with Plaintiff about whether the second job description accurately reflected his job duties. Ms. Maness testified that the second job description, the description for the light equipment operator in the Streets Division, was outside of Plaintiff's capabilities pursuant to his FCE and would have to be modified in order for Plaintiff to perform the position.
19. There is no evidence in the record that Dr. Brooks, Dr. Ramos, or any other treating physician, reviewed or approved the job descriptions presented by Defendant.
20. When Plaintiff was released to return to work with restrictions in late December 2009 and January 2010, Defendant requested that Plaintiff return to work.
21. Plaintiff testified that he was in too much pain to return to work and could not perform the lifting required of his position as a light duty equipment operator. Plaintiff testified that in January and February of 2010 he was in constant pain. Plaintiff described his pain, "like a pulling in my back and a constant throbbing and burning going down my leg." The Full Commission finds Plaintiff's testimony to be credible.
22. On January 20, 2010, Plaintiff was suspended and subsequently terminated for refusing to return to the light equipment operator position offered by Defendant. Defendant based their decision on the fact that Plaintiff was instructed to report to work on January 14, 2010, January 15, 2010, January 19, 2010, and January 20, 2010, constituting four unreported absences within 12 months. According to Defendant's "Disciplinary Action Report," Plaintiff was suspended from work on January 20, 2010. The Full Commission finds that January 15, 2010 is the date Plaintiff had the discogram and CT imaging performed for conditions related to his admittedly compensable injury. *Page 8 
23. On January 21, 2010, Defendant filed a Form 24 Application to Terminate or Suspend Payment of Compensation. As grounds for the Form 24 Application, Defendant stated that Plaintiff was "released to return to work with restrictions on January 5, 2010 by his treating physician to his regular job and the restrictions complied with his regular duties per FCE, but Plaintiff failed to return to work." Defendant relied upon the release to return to work with a thirty (30) pound restriction assigned by Dr. Ramos. The Full Commission finds, however, that on January 25, 2010, Dr. Brooks, an authorized treating physician, assigned Plaintiff permanent work restrictions of no lifting and carrying over twenty (20) pounds and restricted him from driving or riding in a dump truck for over two (2) hours without a fifteen (15) minute break, based upon Plaintiff's FCE results and more current radiographic findings.
24. Plaintiff objected to Defendant's Form 24 Application and a telephonic hearing with Special Deputy Commissioner Baucom was held on February 11, 2010. Based on the evidence submitted to the Industrial Commission, Special Deputy Commissioner Baucom disapproved Defendant's application because Defendant failed to show that Plaintiff unjustifiably refused suitable employment.
25. The Full Commission finds that Defendant's light equipment operator job in the Streets Division and Utilities Division exceeded the work restrictions given by Dr. Brooks. The Full Commission further finds, based upon the greater weight of the evidence, including the testimony of Ms. Maness and Plaintiff, that the light equipment operator job in the Streets Division and Utilities Division exceeded the work restrictions recommended by the FCE, and Plaintiff's physical limitations due to pain.
26. On April 23, 2010, Plaintiff underwent a second opinion evaluation with Dr. Michael Tooke, an orthopedic surgeon. Dr. Tooke reported that Plaintiff was unable to sit or *Page 9 
stand for any significant length of time and that he was "miserable." Dr. Tooke also reported that he inadvertently walked in on Plaintiff in the examining room when Plaintiff was donning the paper shorts given to him. Dr. Tooke reported observing Plaintiff trying to bend forward enough to get his leg into the shorts, and having great difficulty. Dr. Tooke recommended an L4-5, L5-S1 laminectomy and fusion. Dr. Tooke noted that Plaintiff had concordant pain at the L3-4 level and may have a minor annular tear. Dr. Tooke further noted that Plaintiff was temporarily totally disabled. At his deposition, Dr. Tooke acknowledged that he was reviewed a job description indicating Plaintiff would be required to lift one hundred (100) pounds and that he had no opinion as to whether Plaintiff might be capable of returning to work if the true job description was different from the one provided to him.
27. Defendant contends that Plaintiff was discharged from employment in accord with Defendant's attendance policy due to his unexcused absences from work following his physician's release and thus Plaintiff has constructively refused suitable employment. As found above, the employment offered to Plaintiff was not suitable to his physical restrictions and limitations resulting from his injury. Also, considering the dates of absences given as the basis for termination, Plaintiff was undergoing medical treatment on June 15, 2010, and there is no indication that he was available for work on that date.
28. The Full Commission finds that Plaintiff's termination was due to his physical condition as a result of his compensable injury by accident and that Plaintiff was justified in not returning to his position as a light equipment operator for Defendant, as the job offered was not suitable. Accordingly, the greater weight of the evidence of record, including Plaintiff's testimony and the medical evidence, supports the Special Deputy Commissioner's decision filed on February 18, 2010, disapproving Defendant's Form 24 Application. *Page 10 
29. The Full Commission finds there is insufficient evidence of record to find the light equipment operator position, modified to accommodate Plaintiff's permanent restrictions, would be generally available in the competitive labor market.
30. As a result of plaintiff's low back condition due to his compensable injury, Plaintiff has not been able to return to work and remains totally disabled.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 12, 2009, Plaintiff sustained a compensable injury to his lower back, arising out of and in the course of his employment with Defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation during the continuance of such refusal, unless, in the opinion of the Industrial Commission, such refusal was justified. N.C. Gen. Stat. § 97-32. The greater weight of the evidence presented herein shows that the employment offered to Plaintiff was not suitable; therefore, Plaintiff's was justified in not returning to work. N.C. Gen. Stat. § 97-32.
3. To establish that an employee has constructively refused employment to bar payment of benefits, the employer must show that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury. McRae v. Toastmaster, Inc., *Page 11 358 N.C. 488, 497, 597 S.E.2d 695, 701 (2004); Seagraves v. AustinCo. of Greensboro, 123 N.C. App. 228, 233-234;472 S.E.2d 397, 401 (1996).
4. Defendant has attempted to use Plaintiff's alleged violations of its attendance policy in order to support a conclusion that Plaintiff was terminated for misconduct or fault unrelated to his compensable injury. However, the Full Commission has found that Plaintiff underwent a discogram on January 15, 2010, and did not attend work for that reason. As the discogram is clearly related to Plaintiff's compensable injury, allowing Defendant to use that absence as a ground for terminating Plaintiff would be inapposite to the holding of Seagraves.
5. The Full Commission further concludes that since Plaintiff's termination was related to his justified failure to return to a job that was not suitable to his physical restrictions and limitations resulting from his compensable injury, Defendant has not shown that Plaintiff's termination was unrelated to his compensable injury. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 233-234; 472 S.E.2d 397, 401 (1996).
6. As a result of plaintiff's low back condition due to his compensable injury, Plaintiff has not been able to return to work and remains totally disabled. As a result, Plaintiff is entitled to receive ongoing temporary total disability compensation at the rate of $300.90 per week. N.C. Gen. Stat. § 97-29.
7. As a direct and proximate result of Plaintiff's compensable injury by accident on June 12, 2009, Plaintiff is entitled to all medical expenses incurred or to be incurred for his lower back, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen Plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 *********** *Page 12 
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendant's Form 24 Application to terminate or suspend compensation is DENIED.
2. Defendant shall continue to pay temporary total disability compensation to Plaintiff at the rate of $300.90 per week until he returns to work, or until further Order of the Industrial Commission.
3. Defendant shall pay all past and future medical expenses incurred or to be incurred as a result of Plaintiff's compensable injury by accident to his lower back, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
4. An attorney's fee of twenty-five percent (25%) of the compensation due Plaintiff is awarded to Plaintiff's attorney, payable by deducting and paying to Plaintiff's counsel every fourth check.
5. As this matter originated as a Form 24 Application to terminate or suspend compensation, either party may request a hearing to present further evidence on disability.
6. Defendant shall pay the costs.
This the ___ day of June, 2011.
 S/___________________ BERNADINE S. BALLANCE *Page 13 
COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1